IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| UNITED STATES OF AMERICA, | ) | No. 18-CR-2059 |
| --- | --- | --- |
| Plaintiff, | ) | **INFORMATION** |
| vs. | ) | Count 1 |
|  | ) | 18 U.S.C. § 1343: Wire Fraud |
| JAMES BRENNAN, | ) |  |
|  | ) | 18 U.S.C. § 981(a)(1)(C) |
| Defendant. | ) | Forfeiture Allegation |

The United States Attorney charges:

## Count 1

## Wire Fraud

1. At all times relevant to this Information:

a. Individuals or entities wanting to produce or handle certified organic grain in the United States were required to obtain certifications through the United States Department of Agriculture's National Organic Program (NOP). In accordance with applicable regulations, NOP accredited third party certifiers. The certifiers then certified operations or farmers as being eligible to produce organic grain themselves or to handle organic grain produced by others.

b. In order for grain to be certified as organic, the grain must have been grown through approved methods and without the use of certain substances, including synthetic chemicals, and produced and handled in compliance with the National Organic Program. This would include an organic plan agreed to by the producer or handler of such grain and approved by the third party certifier.

c. Defendant operated a certified organic farm in Nebraska. Defendant and others known and unknown to the United States Attorney's Office farmed the land, but defendant did not own the organic certification, which was owned by defendant's co-schemer or an entity operated by defendant's co-schemer. Defendant also farmed other land in Nebraska that was not certified as organic.

d. Defendant's co-schemer also owned and operated J.S., which operated primarily out of Ossian, Iowa, in the Northern District of Iowa. J.S. was in the business of selling and marketing grain labeled as organic to customers nationwide.

e. Defendant sold to J.S. and others grain from fields that had been certified as organic as well as grain from fields that were not certified as organic.

## The Scheme to Defraud

2. Beginning no later than about 2010, and continuing through at least about 2017, in the Northern District of Iowa and elsewhere, defendant and others known and unknown to the United States Attorney's Office knowingly participated in a scheme to defraud with knowledge of its fraudulent nature and knowingly participated in a scheme to obtain money by means of material false representations or promises. In particular, defendant sold non-organic grain to J.S. or directly to customers that he knew defendant's co-schemer was fraudulently marketing as being certified organic. At least most of the grain defendant sold to J.S. or directly to customers during this period was fraudulently marketed as

organic because, as defendant then well knew, the grain being sold was actually either entirely non-organic or a mix of organic grain and non-organic grain. At least most of the grain sold was non-organic because (i) the grain was grown with unapproved substances on fields that were not certified as organic, (ii) the grain was grown on certified organic fields with the use of unapproved substances, or (iii) the otherwise organic grain was commingled with non-organic grain, thereby rendering any actual organic grain non-organic.

Execution of the Scheme to Defraud

3. The scheme and artifice to defraud and obtain money by false pretenses was carried out, in part, as follows:

4. It was part of the scheme to defraud that defendant or his affiliates or co-schemers farmed and raised grain (primarily corn and soybeans) on certified organic fields in Nebraska under defendant's co-schemer's certification or an entity controlled by defendant's co-schemer. Growing some crops on certified organic land allowed defendant's co-schemers to provide certifications or representations to customers that grain being purchased came from those organic operations and was, therefore, organic when, in truth and fact and as defendant then well knew, the grain being purchased by these customers was at least mostly non-organic.

5. It was also part of the scheme to defraud that, even on certain certified organic fields, defendant and defendant's co-schemers in Nebraska would apply substances not approved for use on certified organic land, including pesticides and nitrogen, that rendered the affected crops non-organic and that would have resulted

in the third party-certifier decertifying the land had the certifier known about the substances being used.

6. It was part of the scheme to defraud that defendant's co-schemer misrepresented or caused misrepresentations to customers that grain being sold was certified organic because it was grown on certified organic land. In truth and fact and as defendant then well knew, at least most of the grain was entirely non-organic or a mix of organic and non-organic grain. Since at least 2010, at least most of the grain that defendant sold to J.S. or directly to customers was not organic because, even if there were some organic grain produced, it was often mixed with non-organic grain prior to any of the organic grain being sold and, once commingled, the formerly organic grain was no longer organic.

7. It was part of the scheme to defraud that defendant sold or caused the sale of a significant amount of non-organic grain that was fraudulently marketed as organic. For the years 2010 to 2017, defendant received more than $2.5 million for grain marketed as organic that was sold through J.S. or directly to other purchasers. That total does not include the amounts received by others known to the United States Attorney's Office who farmed land with the defendant, who shared equipment with the defendant, who stored grain in the same bins as defendant, and who, like defendant, sold grain to J.S. and to customers that was fraudulently marketed as organic.

## The Wire

8. For the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, defendant used or caused to be used interstate wire communications, that is, wire transfers of funds, to effectuate the transfer of funds from customers of grain fraudulently marketed and sold as organic to accounts controlled by defendant's co-schemer or an entity owned by defendant's co-schemer for eventual disbursement to defendant or other co-schemers. Specifically, on February 10, 2017, a wire transfer was sent from a customer's account in Sonora, California, transferring $419,417.50 from the customer's account into an account owned by an entity owned by defendant's co-schemer at a bank in Luana, Iowa, in the Northern District of Iowa.

9. This was in violation of Title 18, United States Code, Section 1343.

## **Forfeiture Allegation**

10. The allegations contained in Count 1 of this information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

11. Upon conviction of the offense in violation of 18 U.S.C. § 1343 set forth in Count 1 of this information, defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, $10,882,701.

12. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

PETER E. DEEGAN, JR.
United States Attorney

By: /s/ Jacob A. Schunk

JACOB A. SCHUNK
ANTHONY MORFITT
Assistant United States Attorneys